UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEONID BURLAKA et al.,

    Plaintiff,

v.                                                                 Case No. 17-C-1126

CONTRACT TRANSPORT SERVICES LLC,

    Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Leonid Burlaka, Travis Frischmann, Tim Keuken, and Roger Robinson filed this individual, collective, and Rule 23 class action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, against Defendant Contract Transport Services LLC (CTS), alleging that CTS violated the FLSA and Wisconsin wage statutes by failing to pay them overtime premium pay for work they performed in excess of forty hours per week. The court has subject matter jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. The case is before the court on CTS's motion for summary judgment. CTS claims that the undisputed evidence establishes that Plaintiffs are subject to the Federal Motor Carrier Safety Act (FMCSA) and therefore exempt from the FLSA, as well as Wisconsin's overtime laws. For the reasons set forth below, CTS's motion for summary judgment will be granted.

**BACKGROUND**

CTS is a motor carrier registered with the FMCSA that signs contracts with customers to provide for the transport of goods across state lines. CTS employs approximately 171 drivers

qualified under the FMCSA regulations to drive motor vehicles in interstate commerce. At all times relevant hereto, Green Bay Packaging, Inc. (Green Bay Packaging) was one of CTS's customers. CTS contracted with Green Bay Packaging to facilitate the transport of its products in and out of Green Bay Packaging facilities to locations within and without the State. Two of CTS's operation sites were located at Green Bay Packaging facilities in Green Bay (GB Shipping Container) and De Pere (De Pere Shipping Container). From April 19, 2015 to June 8, 2018, CTS transported loaded trailers for over 17,226 customer orders through GB Shipping Container, 19.9% of which involved movement across state lines. CTS also transported loaded trailers for over 8,882 customer orders through De Pere Shipping Container, 26.9% of which involved movement across state lines. Def.'s Proposed Findings of Fact (DPFOF), ECF No. 23, at ¶¶ 5–6.

To serve its customers, CTS offers a variety of services, including over-the-road transportation, trailer spotting, and yard-management services. Burlaka, Frischmann, Keuken, and Robinson performed yard-spotting duties while employed at CTS. These duties required the plaintiffs to move trailers that were sometimes loaded with product, sometimes filled with corrugated cardboard that needed to be further processed to become finished boxes, and sometimes empty within and between Green Bay Packaging facilities. The plaintiffs received instructions as to which trailers to move and where to move them from a Green Packaging employee. The plaintiffs sometimes communicated directly with a CTS dispatcher. As spotters, the plaintiffs only moved trailers within or between Green Bay Packaging facilities, although Robinson sometimes moved trailers from other CTS accounts to a Green Bay Packaging location. When the plaintiffs delivered trailers to a drop lot, the trailers would be stored briefly and then subsequently moved to another facility and then possibly out of state. When trailers were pulled from GB Shipping

2

Container, they could be parked at concrete pads next to the docks or at an overflow lot, and these movements would not be recorded. Trailer movements that were recorded were written on spot sheets. In the course of performing their yard-spotting duties, the plaintiffs would at times cross public roads.

According to Green Bay Packaging bills of lading and CTS spot and trip sheets, though the plaintiffs did not themselves drive loaded trailers across state lines, each plaintiff transported trailers that were subsequently driven across state lines. According to these documents: (1) between February 24, 2016 and August 25, 2017, Burlaka hauled at least sixty-eight trailers that were later driven out of state, DPFOF at ¶ 22; Pls.' Response to Def.'s Proposed Findings of Fact (PRDPFOF), ECF No. 32, at ¶ 22; ECF No. 24 App. Parts 1–2; (2) between August 12, 2014 and March 11, 2016, Frischmann hauled no fewer than thirteen trailers that were later driven out of state, DPFOF at ¶ 55; ECF No. 24 App. Part 3; (3) between August 24, 2015 and November 14, 2017, Keuken hauled no fewer than forty-one trailers that were later driven out of state, DPFOF at ¶ 37; PRDPFOF at ¶ 37; ECF No. 24 App. Parts 2–3; and (4) between September 9, 2014 and July 18, 2017, Robinson hauled no fewer than seven trailers that were later driven out of state, DPFOF at ¶ 86; ECF No. 24 App. Parts 3–4. The delay between when the plaintiffs moved these trailers and when the trailers were moved across state lines was typically one or two days. *See* ECF No. 24.

The plaintiffs experienced similar hiring processes and minimum expectations of employment at CTS. The hiring process involved consenting to a background check, as required under FMCSA safety regulation 49 C.F.R. § 391.23, providing alcohol and controlled substance training and testing records in compliance with 49 C.F.R. §§ 382.405(f)–(h) and 382.413(a)–(g), providing background information from previous employers, obtaining a medical certificate, passing

3

a pre-employment screening, certifying completion of a driver evaluation, and providing a statement of available on-duty hours. The plaintiffs each received a CTS driver handbook and agreed to follow its guidelines. During employment at CTS, the plaintiffs, like all CTS drivers, maintained commercial driver's licenses (CDLs), remained part of the drug and alcohol testing pool mandated under FMCSA safety regulations, and generally complied with the FMCSA driver application and qualification process as well as other FMCSA safety regulations. DPFOF at ¶ 16; *see generally* 49 C.F.R. §§ 40, 391.23–31, 391.41–43, 395. Although the plaintiffs generally complied with FMCSA regulations, CTS did not achieve full compliance. CTS did not conduct an inquiry and record of violations for the plaintiffs each year, as required under 49 C.F.R. §§ 391.25 and 391.27, and did not require the plaintiffs to complete their road tests on a public road with traffic, as required under 49 C.F.R. § 391.31(c)(5). PRDPFOF at ¶ 16. Regarding work assignments, CTS maintains a policy and practice that allows it to call on any of its drivers, including yard spotters, to transport product on public roads, including transport over state lines, although whether CTS drivers are required to accept the over-state-lines leg of interstate trips is unclear. *See* Aaron Cunningham Decl., ECF No. 22, at ¶¶ 3–4, 30, 33.

On August 14, 2017, Burlaka, Keuken, and Robinson filed this action, alleging that CTS failed to pay premium overtime pay to them for work they performed in excess of forty hours per week in their roles as CTS drivers performing yard-spotting duties, in violation of the FLSA and Wisconsin law. On March 15, 2018, Frischmann was added as a plaintiff in an amended complaint, along with individual and Rule 23 class action claims for violation of the Wisconsin wage statute.

**LEGAL STANDARD**

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). The standard for summary judgment mirrors the standard for directed verdict under Federal Rule of Civil Procedure 50(a), which requires that a verdict not be directed where reasonable minds could differ as to the import of the evidence. *Anderson*, 477 U.S. at 250–51. The "genuine issue" summary judgment standard is very close to the "reasonable jury" directed verdict standard, the small difference being procedural timing. *Id.* at 251. "In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. A court faced with a motion for summary judgment must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004).

## ANALYSIS

The FLSA requires employers to pay overtime pay to employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660 (7th Cir. 2011). As a general rule, employees of a motor carrier that engages wholly in intrastate commerce are subject to the Secretary of Labor's jurisdiction, and consequently to the overtime and maximum hours provisions of the FLSA. *Johnson*, 651 F.3d at 660 (citing *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994)). "In contrast, the employees of a motor carrier that engages in interstate commerce may come under the Secretary of Transportation's jurisdiction under the Motor Carrier Act." *Id.* at 650–51; 49 U.S.C. § 31502; 29 U.S.C. § 213(b)(1) (Motor Carrier

5

Act (MCA) Exemption). Employees covered by the MCA exemption are also exempt from the state wage and overtime laws. Wis. Admin. Code DWD § 274.04(4). The reason for this exemption in the MCA, like similar exemptions in legislation regulating railroad and maritime employees, is public safety:

> In comparable fields, Congress previously had prescribed safety equipment, limited maximum hours of service and imposed penalties for violations of its requirements. In those Acts, Congress did not rely upon increases in rates of pay for overtime service to enforce the limitations it set upon hours of service. While a requirement of pay that is higher for overtime service than for regular service tends to deter employers from permitting such service, it tends also to encourage employees to seek it. The requirement of such increased pay is a remedial measure adapted to the needs of an economic and social program rather than a police regulation adapted to the rigid enforcement required in a safety program.

*Levinson v. Spector Motor Serv.*, 330 U.S. 649, 657 (1947) (footnote omitted) (citing *Overnight Motor Co. v. Missel*, 316 U.S. 572, 577 (1942)).

The Department of Transportation (DOT) set forth the standard for applying the MCA exemption to employees in a notice of interpretation the Federal Highway Administration promulgated in 46 Fed. Reg. 37902. *See Johnson*, 651 F.3d at 661–64 (analyzing the DOT's interpretation to apply the exemption). The notice of interpretation provides in pertinent part:

> If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs. Satisfactory evidence would be statements from drivers or carriers and any employment agreements. Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to [the Secretary of Transportation's] jurisdiction for a 4-month period from the date of the proof.

Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37902, 37903 (July 17, 1981).

Here, there is no dispute that CTS is engaged in interstate commerce. The MCA exemption thus applies to plaintiffs if (1) they have driven in interstate commerce or (2) could reasonably have been expected to make an interstate run. *Id.* An employee need not actually drive across state lines to have "driven in interstate commerce" under the MCA exemption. *See Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 896–97 (7th Cir. 2009) (holding that truck drivers who transport wine from warehouse in Chicago owned by wholesale importer and distributor to Chicago retailers are engaged in interstate commerce within meaning of MCA and therefore exempt from FLSA where one quarter of wine shipped to warehouse was ordered in advance by retailers); *Mazzarella v. Fast Rig Support, LLC*, 823 F.3d 786, 791 (3d Cir. 2016) (holding that when transportation performed by employee takes place within a single state, the interstate commerce requirement for falling within the MCA exemption to the FLSA overtime requirements may still be met by demonstrating that the employee's work involves a practical continuity of movement across state lines).

Here, it is undisputed that (1) CTS is an interstate motor carrier; (2) CTS transports interstate freight; (3) the plaintiffs operated commercial motor vehicles; and (4) the plaintiffs were subject to transport the interstate freight as part of their spotter driving assignments. While it is true that the plaintiffs did not personally drive across state lines in their role as spotters, that doesn't mean they do not fall within the MCA exemption. The question is whether they were called upon or subject to being called upon to transport one leg of those interstate movements by taking the Green Bay Packaging orders placed on loaded trailers from the yard to drop yards or warehouses for another driver to pick up and continue the freight movement.

The undisputed evidence demonstrates that the plaintiffs were subject to being called upon to transport loaded trailers as part of larger interstate movements. When the plaintiffs moved trailers around Green Bay Packaging facilities, the trailers were sometimes loaded, sometimes filled

7

with cardboard that required further processing, and sometimes empty. Plaintiffs' yard-spotting duties consisted of facilitating the movement of customer freight around several facilities, and part of these duties included moving trailers loaded with boxes manufactured at GB Shipping Container and De Pere Shipping Container to other docks at GB Shipping Container or De Pere Shipping Container, to several other Green Bay Packaging warehouses, or to a drop lot across the street from GB Shipping Container. *See* ECF No. 22 at ¶¶ 4, 8–10, 13–15, 30. Once dropped at one of these locations, either CTS drivers assigned to regional over-the-road work or another motor carrier's driver would pick up the loaded trailers and transport them to their final destination inside or outside Wisconsin. *Id.* at ¶¶ 11, 16. A significant percentage of CTS orders that flowed through GB Shipping Container and De Pere Shipping Container from 2015 to 2018 were interstate in nature, with outbound and inbound orders ranging from 18% to 23% and 14% to 23% at GB Shipping Container and 24% to 28% and 15% to 54% at De Pere Shipping Container. *See id.* at ¶¶ 21–25.

Given the interstate nature of CTS's operations and the fact that CTS could call upon any of its drivers, including those performing yard-spotting duties, to participate in one leg of the interstate transport of product, the plaintiffs fall squarely within the MCA exemption. *See* ECF No. 22 at ¶¶ 3–4, 30, 33; 46 Fed. Reg. 37903; *Morris*, 332 U.S. at 431 (holding that MCA exemption applied to drivers where "3% to 4% of the carrier's total services" involved interstate commerce and performance of such services was indiscriminately shared by drivers); *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 874 (3d Cir. 2015) (holding that the MCA exemption applied where 6.9% of all trips drivers took were interstate, as much as 9.7% of the motor carrier's transit division's annual revenue derived from interstate routes, and the motor carrier operated at least one interstate route per month); *Leipolt v. All-ways Contractors, Inc.*, No. 15-C-628, 2016 WL 2599125, at *4 (E.D. Wis. May 5, 2016) (holding that the MCA exemption applied to drivers who would randomly be

8

assigned to interstate work and who worked for a motor carrier that derived 30% of its gross revenue from interstate work); *see also* 46 Fed. Reg. 37903 (explaining that carrier statements constitute satisfactory evidence to demonstrate DOL's jurisdiction). The undisputed interstate character of the plaintiffs' work, including compliance with applicable federal regulations, rather than the frequency or proportion of work that is interstate, requires this result. *See Morris*, 332 U.S. at 431–32; *Levinson*, 330 U.S. at 674–75; *see also Resch*, 785 F.3d at 875 ("[E]vidence of carrier's efforts to comply with DOT regulations . . . reinforce the drivers' reasonable expectation of driving in interstate commerce."); *Songer v. Dillon Res., Inc.*, 636 F. Supp. 2d 516, 526 (N.D. Tex. 2009), *aff'd*, 618 F.3d 467 (5th Cir. 2010) (same).

Plaintiffs argue that CTS did not require that they accept interstate assignments. In support of this argument, the plaintiffs principally rely on *Mason v. Quality Transport Services, Inc.*, 2005 WL 5395338 (S.D. Fla. Aug. 29, 2005). In *Mason*, the court denied summary judgment because the plaintiff bus driver's deposition testimony raised a genuine dispute of material fact as to whether the driver was subject to driving an interstate bus route. *Id.* at *1–3. The *Mason* court noted that the plaintiff driver never drove any route other than the local, intrastate route and that the driver's employer apparently allowed him to permanently drive that route. *Id.* at *3. Plaintiffs cite Burlaka's declaration in analogizing their case to *Mason*. In the referenced portion of Burlaka's declaration, he attests that he applied for a spotter position because he did not wish to perform any interstate work, that he was offered but declined to accept over-the-road driving assignments, that CTS did not discipline him for so declining, and that CTS never told him that he was expected or required to accept over-the-road assignments. ECF No. 29 at ¶ 6. Plaintiffs' reliance on *Mason* is misplaced because bus routes are distinguishable from the multi-leg transport of customer freight. Whereas the bus driver in *Mason* testified that his route was entirely intrastate and therefore he was

9

not subject to participate in an interstate trip, here, the plaintiffs did not themselves cross state lines but were nevertheless subject to transporting freight in fulfillment of CTS's interstate customer orders. Burlaka's declaration is unclear as to whether the over-the-road assignments he declined to accept meant that he did not drive the leg of the transport that involved crossing state boundaries or that he did not drive on public roads at all. If Burlaka meant the former, then his statement does not mean that he was not called upon in his intrastate work to transport freight for interstate customers. If he meant the latter, then he contradicts his own declaration, which acknowledges that he crossed public roads. *Id.* at ¶ 9. Either way, neither Burlaka nor any of the other plaintiffs has disputed the interstate nature of the freight that CTS transports or that they can be called upon to transport that freight in satisfaction of interstate orders, even if their legs of the transport are entirely intrastate. *Mason* is therefore unpersuasive.

Plaintiffs also challenge the import of testimony from Aaron Cunningham, CTS's Director of Operations, in establishing that they are subject to being called upon to drive in interstate commerce. Specifically, Plaintiffs point to the Seventh Circuit's opinion in *Johnson v. Hix Wrecker Service, Inc.*, 651 F.3d 658 (7th Cir. 2011) to argue that Cunningham's declaration is too vague to establish that they could be called upon to transport products out of state. Plaintiffs' reliance on *Johnson* is similarly unpersuasive. The *Johnson* court reversed a grant of summary judgment under the MCA exemption where the only evidence that the plaintiff tow truck driver was subject to being assigned an out-of-state run was an affidavit from the carrier's corporate secretary that stated that the carrier "routinely" provided out-of-state services for its customers and that the driver was subject to being assigned an out-of-state run at all times. *Id.* at 660, 663–64. The *Johnson* court noted that "routinely" is "simply too vague" for the court to determine whether the period the affiant had in mind was "reasonable" within the meaning of 46 Fed. Reg. 37902. *Id.* at 663. Here, in contrast,

CTS has exceeded the *Johnson* burden by providing undisputed evidence that freight flowing through GB and De Pere Shipping Containers serviced interstate customers approximately 20% of the time, if not greater. *See* ECF No. 22 at ¶¶ 21–25. Because CTS provides more than "only an inconclusive and ambiguous affidavit," *Johnson*, 651 F.3d at 663, Plaintiffs find no support in *Johnson*.

Plaintiffs likewise find no relief in the *de minimis* exception, 29 C.F.R. § 782.2(b)(3), which provides that the MCA exemption does not apply where the safety-affecting activities of an employee's job "are so trivial, casual, and insignificant as to be de minimis." *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708–09 (1947). Courts have generally held that the *de minimis* exception does not exempt drivers from DOT jurisdiction because any number of interstate deliveries by a carrier, no matter how trivial, implicates safety. *Edwards v. Aramark Uniform & Career Apparel, LLC*, No. 14C8482, 2016 WL 236241, at *12 (N.D. Ill. Jan. 19, 2016) (citing *Turk v. Buffets, Inc.*, 940 F. Supp. 1255, 1261–62 (N.D. Ill. 1996)); *Resch*, 785 F.3d at 875 ("Although the Supreme Court has recognized a *de minimis* exception to the application of the [Motor Carrier Act], we have noted that [a] number of courts have held that drivers should seldom, if ever, fall within [it]." (internal citations and quotations marks omitted)); 46 Fed. Reg. 37903 ("The courts that have applied this [*de minimis*] principle find that it should seldom, if ever, be applied to drivers because of the direct effect of driving on the safety of motor vehicle operations.").

As an initial matter, the *de minimis* exception is not applicable here where the court has already determined that the plaintiffs' work activities involved interstate activity and concerned motor safety. *See Antemate v. Estenson Logistics, LLC*, No. CV14-5255DSF(RAOx), 2017 WL 5159613, at *7 n.9 (C.D. Cal. Nov. 7, 2017) ("Courts that have found the de minimis exception to apply generally have done so only after concluding that the employees did not have a reasonable

11

expectation of being assigned interstate commerce work." (emphasis in original)); *Flowers v. Regency Transp., Inc.*, 535 F. Supp. 2d 765, 770 n.4 (S.D. Miss. 2008) (observing that "numerous courts" have found that employees "were engaged in activities of a character directly affecting the safety of operation of motor vehicles in interstate commerce . . . where an employer's drivers could reasonably expect to be called upon to drive in interstate commerce"); *see also Edwards*, 2016 WL 236241, at *13 ("Arguably, the *de minimis* exception is not applicable at all because the Court has already concluded that Plaintiff's job activities involved interstate activity and thus concern motor safety.").

Even were the court to consider the applicability of the exception, the undisputed interstate nature of CTS's business and the safety concerns attendant to drivers like the plaintiffs who operate commercial motor vehicles on public roads do not call for its application. *See* ECF No. 22 at ¶¶ 21–25; *Resch*, 785 F.3d at 874–76 (declining to apply the *de minimis* exception where the carrier's interstate operations accounted for 1% to 9.7% of its transit division's revenue and the plaintiff drivers were subject to being assigned to interstate work); *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 210 (1st Cir. 1972) ("The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations."). Plaintiffs argue that less than 0.1% of Frischmann and Keuken's total trips were possible (as opposed to proven) interstate trips, making application of the *de minimis* rule appropriate. But Plaintiffs' calculation does not account for trips where the plaintiffs made the first leg of broader interstate movements, that the records to which the plaintiffs cite only reflect loads hauled to their destination by CTS for its customers and not loads hauled for those customers by carriers other than CTS, and that not all of the plaintiffs' trailer movements were recorded. In any

event, even if the plaintiffs minimally or infrequently drove in interstate commerce, such driving implicates safety concerns that are hardly trivial. *See Edwards*, 2016 WL 236241, at *12; *Walton v. La. Compressor Maint., Inc.*, No. 96-2156, 1997 WL 129393, at *3 (E.D. La. 1997) ("By definition, [t]he activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Thus, by virtue of his participation as a driver in interstate commerce, [the plaintiff] is not entitled to the *de minimis* exception to the overtime exemption." (internal citations and quotation marks omitted)).

Because the court finds that the plaintiffs, as CTS drivers performing yard-spotting duties, were subject to being called upon to transport one leg of interstate movements, the MCA exemption applies and CTS is entitled to summary judgment on the plaintiffs' FLSA and Wisconsin overtime claims. *See* 29 U.S.C. § 213(b)(1); Wis. Admin. Code DWD § 274.04(4).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file sur-reply (ECF No. 40) is **GRANTED** and CTS's motion for summary judgment (ECF No. 20) is **GRANTED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of March, 2019.

                                                s/ William C. Griesbach
                                                William C. Griesbach, Chief Judge
                                                United States District Court